IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

WAL-MART STORES, INC.                                              PLAINTIFF

    v.                    Civ. No. 09-5062

BLACK & DECKER (U.S.), INC.                                        DEFENDANT

### Memorandum Opinion

In March 2009, Plaintiff, Wal-Mart Stores, Inc., filed a declaratory judgment action in the Circuit Court of Benton County, Arkansas seeking declaration that Defendant, Black & Decker (U.S.), Inc., has a duty based on the contractual relationship between the parties to defend and indemnify it in Civil Action No. 3:06-CV-2005-G, pending in the United States District Court for the Northern District of Texas. After removing the state-court action to the United States District Court for the Western District of Arkansas, Defendant filed a counterclaim seeking declaration that no such duty exists. Currently before the Court are cross-motions for summary judgment and related documents. For reasons recited herein, Defendant's motion for summary judgment (doc. 9) is **GRANTED**, and Plaintiff's motion (doc. 22) is **DENIED**.

### I. Standard

The party moving for summary judgment bears the burden of establishing the absence of issues of material fact in the record and of establishing that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the moving party shows that there are no material

issues of fact in dispute, the burden shifts to the nonmoving party to set forth facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574 (1986). "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Uhl v. Swanstrom*, 79 F.3d 751, 754 (8th Cir. 1996). Based on the undisputed material facts in this case, disposition by summary judgment is appropriate.

**II.   Undisputed Material Facts**

In determining whether summary judgment is appropriate, a court must view the facts and inferences in the light most favorable to the non-moving party. *See Rabushka v. Crane Co.*, 122 F.3d 559, 562 (8th Cir. 1997). The following facts are undisputed.

1. In May 1999, Wal-Mart Stores, Inc. ("Wal-Mart") and Black & Decker (U.S.), Inc. ("Black & Decker") entered a contractual agreement labeled "Vendor Agreement."

2. The Vendor Agreement states in relevant part:

   Indemnification: Vendor shall protect, defend, hold harmless and indemnify Purchaser from and against any and all claims, actions, liabilities, losses, costs and expenses, including reasonable attorney fees and costs, even if such claims are groundless, fraudulent or false . . . arising out of any actual or alleged death or injury to any person, damage to any property, or any other damage or loss, by whomever suffered, resulting or claimed to result in whole or in part from any actual or alleged defect in such merchandise, whether latent or patent, including actual or alleged improper construction or design of said merchandise or the failure of said merchandise to comply with specifications or with any express or implied warranties of Vendor . . . .

3. On November 1, 2006, Randy and Pamela Jackson (collectively "Jacksons") filed a lawsuit against Black & Decker in the United States District Court for the Northern District of Texas.

4. In their complaint, the Jacksons alleged that Mr. Jackson was injured as the result of a defect in a Black & Decker grinder that he purchased at Wal-Mart.

5. On March 22, 2007, the Jacksons' amended their complaint and added Wal-Mart as a defendant, claiming that Wal-Mart violated the Texas Deceptive Trade Practice Consumer Protection Act when it sold the grinder to the Jacksons.

6. Black & Decker, based on its obligations under the Vendor Agreement, agreed to defend and indemnify Wal-Mart against the Jacksons' lawsuit.

7. Thereafter, Black & Decker settled the Jacksons' claims against it. The settlement did not resolve the Jacksons' claim against Wal-Mart.

8. After the settlement, the Jacksons filed their fourth ammended complaint.

9. The fourth amended complaint states in relevant part that:

> Defendant Wal-Mart sold the grinder in questions [sic] as "new" and it was actually a "returned" item to Defendant Wal-Mart and had been disassembled then re-assembled post-manufacturing; Defendant Wal-Mart failed to adequately inform the consumer of this situation and/or failed to keep this product from the stream of commerce when it knew or should have known that product [sic] was deteriorated, reconditioned, reclaimed, used, secondhand

> and/or reassembled post-manufacturing causing it to fail in the manner described herein.
> . . . .
> The claims by Plaintiffs are intended to be limited to only those resulting from independent actions and/or inactions by Defendant Wal-Mart.

10. On October 25, 2007, Black & Decker informed Wal-Mart that it had settled with the Jacksons and would no longer defend or indemnify Wal-Mart in the Jacksons' lawsuit, as "the only remaining claims the Plaintiff is asserting against Wal-Mart relate solely to Wal-Mart's alleged independent negligence."

**III. Analysis**

In the present case, the interpretation and legal effect of the Vendor Agreement between Wal-Mart and Black & Decker is at issue.  Specifically, a dispute exists between the parties as to the extent of the obligation created by the agreement's indemnification provision.  Wal-Mart contends that the provision creates an obligation on the part of Black & Decker to defend and indemnify it against any claim or lawsuit that arises out of an injury to a person "resulting or claimed to result in whole or in part from any actual or alleged defect in such merchandise." Meanwhile, Black & Decker asserts that the indemnification provision requires it to defend and indemnify Wal-Mart in those claims or lawsuits that "result in whole or in part from any actual or alleged defect in [its] merchandise" but does not create a corresponding obligation for those claims or lawsuits that arise as a result of Wal-Mart's sole negligence or misconduct.  For the

reasons reflected herein, we hold that Black & Decker's interpretation of the Vendor Agreement reflects the correct application of Arkansas law to the contractual language.

The Vendor Agreement provides that all disputes arising thereunder are governed by, and construed in accordance with, Arkansas law. Accordingly, as a federal court sitting in diversity, our task is to interpret the language in question as the Arkansas Supreme Court would if this case were before it. *Crussell v. Electrolux Home Products, Inc.*, 499 F. Supp. 2d 1137, 1138 (W.D. Ark. 2007). In so doing, the Court can consider "related state court precedents, analogous decisions, considered dicta, and other reliable sources in an effort to determine what the Supreme Court's decision would be." *Id*. at 1138-39 (quoting *Kennedy Building Associates v. Viacom, Inc.*, 375 F.3d 731, 738 (8th Cir. 2004)).

The construction of an indemnity provision is governed by the rules for the construction of contracts generally. *Pickens-Bond Const. Co. v. North Little Rock Elec. Co.*, 249 Ark. 389, 392, 459 S.W.2d 549, 552 (1970). It is a fundamental principle that "it is the duty of courts to enforce contracts as written and in accordance with the ordinary meaning of the language used and the overall intent and purpose of the parties." *Magic Touch Corp. v. Hicks*, 99 Ark.App. 334, 338-39, 260 S.W.3d 322, 326 (2007). In order to effectuate this principle, "[t]he contract must be viewed from the beginning to end, and all its terms must pass in review,

for one clause may modify, limit or illuminate the other." *Byme, Inc. v. Ivy*, 367 Ark. 451, 459, 241 S.W.3d 229, 236 (2006). At all times, the touchstone of contract interpretation is to effectuate the intent of the parties based on the language they have used. *Health Resources of Ark., Inc. v. Flener*, __ S.W.3d __, No. 08-177, 2008 WL 4173646, *2 (Ark. Sept. 11, 2008).

The Vendor Agreement governs the rights and obligations of Wal-Mart and Black & Deck vis-a-vis one another with respect to the purchase and sale of Black & Decker's products. One provision of this contractual relationship governs indemnification. It is undisputed that the language of indemnification requires Black & Decker to indemnify Wal-Mart for losses that are either caused or allegedly caused by Black & Decker's own acts or omissions. Thus, the question becomes whether the language in the indemnity provision, requiring Black & Decker to indemnify Wal-Mart for all losses resulting "in whole or in part from any actual or alleged defect," is sufficiently broad to encompass indemnification by Black & Decker for Wal-Mart's own negligence or wrongdoing.

Under Arkansas law, the intention of an indemnitor to create an indemnity obligation for injuries caused by the sole negligence or wrongdoing of an indemnitee must be "expressed in clear and unequivocal terms and to the extent that no other meaning can be ascribed." *Pickens-Bond*, 249 Ark. at 394, 459 S.W.2d at 553. To this end, the Arkansas Supreme Court has held that the obligation

to indemnify for "damage or injury from whatever cause" is insufficiently encompassing to require indemnification for the indemnitee's *sole* negligence. *Id*. at 402, 459 S.W.2d at 557. Similarly, in *Arkansas Kraft Corp. v. Boyed Sanders Const. Co.*, 298 Ark. 36, 38, 764 S.W.2d 452, 453 (1989), the Arkansas Supreme Court held that language requiring indemnification for "any and all liabilities or claims for injuries or damages to any person or property" could not be construed as creating an obligation on the part of the indemnitor to indemnify the indemnitee for its own negligence. While recognizing the breadth of this language, the Supreme Court made clear that the "language of an indemnity agreement can be unambiguous and still not spell out in clear, unequivocal, unmistakable terms the indemnitor's intention to obligate itself to indemnify for the indemnitee's negligence." *Id*. at 38, 764 S.W.2d at 453. Finally, and as an example of the clear and unequivocal language required, in *Chevron U.S.A., Inc. v. Murphy Exploration & Production Co.*, 356 Ark. 324, 334, 151 S.W.3d 306, 313 (2004), the Arkansas Supreme Court held that language requiring indemnification for loss "resulting from or arising out of any liability caused by or connected with the joint, concurrent, or sole negligence of [the indemnitee]" created an obligation on the part of the indemnitor to indemnify the indemnitee for liability resulting solely from the indemnitee's own acts and omissions. The indemnification language in the Vendor Agreement

between Wal-Mart and Black & Decker is more similar to that at issue in *Pickens-Bond* and *Arkansas Kraft* than in *Chevron U.S.A.*

The indemnification provision in question makes clear that Black & Decker must indemnify Wal-Mart for "any and all" losses resulting in whole or in part from "any" actual or alleged defect in Black & Decker merchandise sold by Wal-Mart. While these words appear to have the breadth and scope to encompass claims against Wal-Mart for its sole negligence, they are insufficient, as a matter of Arkansas law, to support Wal-Mart's assertion that Black & Decker must indemnify Wal-Mart for its own negligence. As the Arkansas Supreme Court concluded in *Pickens-Bond* and *Arkansas Kraft*, indemnification requirements for "damage or injury from whatever cause" or "any and all liabilities or claims" simply fail to speak to indemnification for an indemnitee's sole acts or omissions. Nowhere do we find language remotely resembling the "joint, concurrent, or sole negligence" indemnification provision upheld in *Chevron U.S.A.* As a result, despite the breadth of the language used in the Vendor Agreement, there is a complete absence of language that spells "out in clear, unequivocal, unmistakable terms the indemnitor's intention to obligate itself to indemnify for the indemnitee's negligence." *Arkansas Kraft*, 298 Ark. at 38, 764 S.W.2d at 453.

Wal-Mart contends that this case is governed by the precedent set out in *Wal-Mart Stores, Inc. v. RLI Ins. Co.*, 292 F.3d 583 (8th

Cir. 2002). There, Wal-Mart sought indemnification for losses that it incurred as the result of its sale of a defective lamp. The indemnification provision at issue stated:

> [Vendor] shall protect, defend, hold harmless and indemnify [Wal-Mart] from and against any and all claims [and] actions . . . or arising out of any actual or alleged death or of injury to any person . . . or other damage or loss, by whomsoever suffered, resulting or claimed to result in whole or in part from any actual or alleged defect in such merchandise . . . .

*Id*. at 587. The Eighth Circuit held that because the injury caused by the lamp was alleged to have resulted from a design defect, the indemnification provision, stating that the vendor would indemnify Wal-Mart for losses resulting "in whole or in part" from a product defect, was sufficiently broad to cover any concurrent negligence on the part of Wal-Mart. *Id*. at 587. In *RLI*, based on the alleged design defect, Wal-Mart's loss would have necessarily been caused, at least "in part," by the vendor's acts or omissions. Unlike *RLI*, it is only the acts or omissions of Wal-Mart, rather than those of Black & Decker, that are currently at issue.

The indemnification provision of the Vendor Agreement is presently implicated by Civil Action No. 3-06CV2005-G, which is pending in the United States District Court for the Northern District of Texas ("Texas litigation"). It is undisputed that Black & Decker and Wal-Mart were previously named as co-defendants in the Texas litigation, each with claims asserted against it, and that based on its settlement with the Jacksons, Black & Decker is

no longer a defendant.  In their fourth amended complaint, the Jacksons, proceeding only against Wal-Mart, state:

> Defendant Wal-Mart sold the grinder in questions [sic] as "new" and it was actually a "returned" item to Defendant Wal-Mart and had been disassembled then re-assembled post-manufacturing; Defendant Wal-Mart failed to adequately inform the consumer of this situation and/or failed to keep this product from the stream of commerce when it knew or should have known that product [sic] was deteriorated, reconditioned, reclaimed, used, secondhand and/or reassembled post-manufacturing causing it to fail in the manner described herein.

These allegations relate only to the independent misconduct of Wal-Mart.  As such, Wal-Mart can only be held liable in the Texas litigation based on its own wrongdoing, and any injury caused by the acts or omissions of Black & Decker cannot form the basis of Wal-Mart's liability.

"It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect."  *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000); *see also Edward J. DeBartolo Corp. v. Cartwright*, 323 Ark. 573, 577, 916 S.W.2d 114, 116 (1996) (It is a "widely recognized doctrine that an amended complaint, unless it adopts and incorporates the original complaint, supersedes the original complaint.").  There can be no dispute that the operative legal document in the Texas litigation is the fourth amended complaint.  As stated, this complaint does not set forth a basis for liability on the part of Black & Decker.  All allegations relate only to actions or inactions on the part of Wal-Mart.  Because the

indemnification provision does not require Black & Decker to indemnify Wal-Mart for liability arising solely from Wal-Mart's own acts or omissions, the Vendor Agreement does not obligate Black & Decker to indemnify Wal-Mart in the Texas litigation.

Wal-Mart contends that Black & Decker's conduct in settling the Jackson's case against it breached its duty of good faith and fair dealing to Wal-Mart.  "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."  *Cantrell-Waind & Associates, Inc. v. Guillaume Motorsports, Inc.*, 62 Ark.App. 66, 72, 968 S.W.2d 72, 75 (1998). As a result, a party must not do anything that would prevent, hinder, or delay performance of its contractual obligations.  *Id*. at 71, 968 S.W.2d at 74.

As previously discussed and as a matter of law, the indemnification provision in the Vendor Agreement (1) requires Black & Decker to defend and indemnity Wal-Mart for losses suffered as a result of Black & Decker's own acts or omissions but (2) does not require Black and Decker to defend or indemnity Wal-Mart for losses incurred as a result of acts or omissions that are solely attributable to Wal-Mart.  Wal-Mart contends that when Black & Decker structured its settlement with the Jacksons in order to resolve the Jacksons' claims against it while leaving the Jacksons' claim against Wal-Mart intact, Black & Decker breached its duty of good faith and fair dealing.  Contrary to Wal-Mart's assertions, by

settling the Jacksons' product claims, Black & Decker effectuated the intent of the parties as expressed in their agreement.  Black & Decker never agreed to defend and indemnify Wal-Mart for losses resulting from Wal-Mart's sole acts or omissions. Therefore, by settling those claims that gave rise to its indemnification duty, Black & Decker did not breach its duty of good faith and fair dealing.

**IV. Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment (doc. 9) is **GRANTED,** and Plaintiff's motion (doc. 22) is **DENIED.**  It is the declaration of the Court that the Vendor Agreement no longer requires Black and Decker to defend or indemnity Wal-Mart in Civil Action No. 3:06-CV-2005-G, pending in the United States District Court for the Northern District of Texas, because the allegations in the Jacksons' fourth amended complaint related solely to the acts or omissions of Wal-Mart.

IT IS SO ORDERED this 17th day of August, 2009.

/s/ Robert T. Dawson
Honorable Robert T. Dawson
United States District Judge